# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JAMES E. MORRIS,** | § § | |
| *Plaintiff,* | § § | SA-18-CV-00048-FB |
| vs. | § § § | |
| **NATIONAL SEATING & MOBILITY, INC.,** | § § § | |
| *Defendant.* | § § § § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant National Seating & Mobility, Inc.'s, Motion for Summary Judgment [#8]. Also before the Court is Plaintiff James E. Morris' Motion for Modification of Scheduling Order and for Leave of Court to File First Amended Complaint [#11]. On January 7, 2019, the Honorable Fred Biery referred all pre-trial proceedings in this case to the undersigned for disposition pursuant to Rule 72 of the Federal Rules of Civil Procedure and Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#17]. The undersigned has authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Modification of Scheduling Order and for Leave of Court to File First Amended Complaint be **DENIED.**

1

## I. Procedural Background

On December 12, 2017, Plaintiff James E. Morris ("Plaintiff") filed a complaint against Defendant National Seating & Mobility, Inc. ("Defendant"), in the 37th Judicial District Court of Bexar County, Texas, alleging claims for strict products liability, breach of warranty, and negligence.[1] Plaintiff served Defendant through its registered agent on December 21, 2017, and Defendant timely filed its Notice of Removal [#1] in this Court on January 17, 2018.

The Court entered a scheduling order on April 19, 2018 [#6]. The Scheduling Order set the deadline for amendment of pleadings as July 20, 2018. (Scheduling Order [#6] at ¶ 3.) The Scheduling Order also set the deadline for Plaintiff to designate testifying experts as August 15, 2018, but Plaintiff has not designated any experts or served any expert reports. (*Id.* at ¶ 4.) Discovery closed on November 15, 2018. (*Id.* at ¶ 6.)

On November 30, 2018, Defendant filed a motion for summary judgment [#8]. A response [#9], a reply [#10], and two sur-replies [#15, #20] have been filed. On January 4, 2019, Plaintiff filed a motion to modify the scheduling order and for leave to file a first amended complaint [#11]. Defendant filed a response [#18].

## II. Facts Established by the Summary Judgment Record

The material facts in the summary judgment record, viewed in the light most favorable to Plaintiff, the non-movant, are as follows. In 2013, Plaintiff purchased a motorized wheelchair from Defendant's San Antonio branch. (Doc. 9-3 at 1–8.) Plaintiff is a paraplegic and is "completely dependent" on his wheelchair for his mobility needs. (*Id.* at 56.) Plaintiff's wheelchair was manufactured and assembled by Pride Mobility Products Corporation and

---

[1] A copy of Plaintiff's Original Petition is attached as part of Exhibit A to Defendant's Notice of Removal [#1].

Quantum Rehab. (Aff. of Robert Black [#8-2] at ¶ 4.) Defendant was involved in the process of fitting Plaintiff for the wheelchair, ordering the wheelchair from the manufacturers, delivering the wheelchair to Plaintiff, and providing maintenance and repair services for the wheelchair. (*Id.* at ¶¶ 4–5.) When he purchased the wheelchair, Plaintiff weighed 255 pounds, and the wheelchair had a maximum weight capacity of 300 pounds. (Doc. 9-3 at 5, 42, 45.)

By August 2014, the wheelchair required repairs. (*Id.* at 55–56.) The wheelchair was returned and Plaintiff received a replacement wheelchair on February 12, 2015. (*Id.* at 80–85.) Within two months of receiving the replacement wheelchair, it too required repairs. (*Id.* at 88.) It was returned and Plaintiff received another wheelchair on August 20, 2015. (*Id.* at 95, 109–10.) On September 15, 2015, Albert Dutson documented that Plaintiff weighed 305 pounds. (*Id.* at 95.) That same day, Dutson emailed Robert Black, the branch manager of Defendant's San Antonio branch, "James's new weight is now 305Lbs and he is blowing the circuit breaker he is now over the weight cap. of this PWC what is our plan of attack on this Issue ?" (*Id.*)

On November 10, 2015, Amy McEwen documented that Defendant received a call from Plaintiff's wife, Jenny Blair, "requesting that the arms on his chair be tightened" because "the arm on the driver's side of the control keeps falling off, and the armrest is leaning down a little too much. The control box keep falling off." (*Id.* at 112.) On November 22, 2015, Kris Herchberger, a technician for Defendant, made "some minor adjustments" to the wheelchair. (*Id.*) Herchberger made several additional repairs to the wheelchair between November 22, 2015, and January 12, 2017, the date of Plaintiff's accident.

On February 28, 2016, Plaintiff was examined by Aria Dayani, M.D., who recorded that Plaintiff weighed 305 pounds. (*Id.* at 126.) Defendant received a copy of Dr. Dayani's medical report on May 20, 2016. (*Id.* at 127.) On August 25, 2016, Herchberger noted on a repair sheet:

3

"Need to know weight cap. 350# per tech line." (*Id.* at 221.) On August 29, 2016, Herchberger documented that the powered wheelchair "is rated for 350# the client weighs 325#." (*Id.* at 206.)

On January 12, 2017, while transferring from his wheelchair to his vehicle, the wheelchair's right armrest broke and Plaintiff fell to the ground and broke his left leg. (*Id.* at 301.) On February 7, 2017, Herchberger noted that the bolt for the adjustment of the pitch of the armrest was broken. (*Id.*) In a Wheelchair/Scooter/Stroller Seating Assessment Form, dated May 26, 2017, Jeff Witten, a physical therapist for Defendant, documented Plaintiff's weight as 333 pounds and listed the maximum weight capacity of his wheelchair as 300 pounds. (*Id.* at 328, 331.) Then, in the section asking for an explanation of "why current seating system is not meeting client's needs," Witten explained: "He nows weighs over #300 and the chair is not built to withstand those forces, He has multiple break downs and has broken the back and the seat elevator post which leaves him bed bound." (*Id.* at 331.) On July 2, 2017, Plaintiff received a new wheelchair with a maximum weight capacity of 450 pounds. (*Id.* at 382, 386.)

### III.  Legal Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record that it believes

demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *See Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the non-movant's response. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### IV. Analysis

There are no genuine issues of material fact and Defendant is entitled to summary judgment as a matter of law. Plaintiff has not designated any expert witnesses, and expert testimony is required to establish the element of causation in Plaintiff's state-law negligence claims against Defendant. Furthermore, Plaintiff has abandoned all other claims previously asserted against Defendant. (Pl.'s Sur-Reply to Def.'s Mot. for Summ. J. [#15] at 4.) Thus, the undersigned recommends that Defendant's Motion for Summary Judgment be granted. In addition, the

undersigned recommends that Plaintiff's Motion for Leave to File First Amended Complaint be denied because, first, Plaintiff filed his motion over five months after the deadline for filing amended pleadings had expired, and, second, the proposed amended pleading would be futile.

**A.     Defendant's Motion for Sum mary Judgment should be granted.**

In his Original Petition, Plaintiff asserted claims for strict products liability based on a design defect, a manufacturing defect, a marketing defect, and a failure to warn, negligence, gross negligence, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose.  Plaintiff subsequently abandoned his strict products liability and warranty claims, leaving only his negligence and gross negligence claims. (*Id.*). Defendant is entitled to summary judgment on both remaining claims.

Under Texas law, to establish liability based on negligence, a plaintiff "must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach." *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001) (citing *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998)).  "The two elements of proximate cause are cause in fact (or substantial factor) and foreseeability." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (citing *D. Hous., Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)).  "Proximate cause cannot be established by mere guess or conjecture, but rather must be proved by evidence of probative force." *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980); *see also Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009) ("Causation must be proved, and conjecture, guess, or speculation will not suffice as that proof.").

"The test for cause in fact is whether the negligent 'act or omission was a substantial factor in bringing about injury,' without which the harm would not have occurred." *Doe v. Boys Clubs*

of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (quoting *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995)). Thus, "the cause-in-fact standard requires not only that the act or omission be a substantial factor but also that it be a but-for cause of the injury or occurrence." *Rogers v. Zanetti*, 518 S.W.3d 394, 403 (Tex. 2017). "A plaintiff proves foreseeability of the injury by establishing that 'a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission.'" *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016) (quoting *Doe*, 907 S.W.2d at 478).

Gross negligence is "as an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others." *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006). "Texas law is well-settled that, in order to prevail on a claim for gross negligence, a plaintiff must first show ordinary negligence." *Taylor v. Alonso, Cersonsky & Garcia, P.C.*, 395 S.W.3d 178, 188 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also Haddock v. Gruber*, No. 05-16-01113-CV, 2018 WL 1417453, at *14 (Tex. App.—Dallas Mar. 22, 2018, pet. denied) (mem. op.) ("In order to prevail on a claim for gross negligence, a plaintiff must first show ordinary negligence.").

The Court's Scheduling Order set the deadline for Plaintiff to designate testifying experts as August 15, 2018, but Plaintiff has not designated any experts or served any expert reports. (Scheduling Oder at ¶ 4.) Defendant argues that Plaintiff's failure to designate an expert to testify concerning proximate causation of his injuries is fatal to his case. The undersigned agrees.

"Lay testimony may be used as evidence of causation in certain circumstances, but '[w]hen expert testimony is required, lay evidence supporting liability is legally insufficient.'" *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 812 (Tex. 2005)). "Proof other than expert testimony will constitute some evidence of causation only

7

when a layperson's general experience and common understanding would enable the layperson to determine from the evidence, with reasonable probability, the causal relationship between the event and the condition." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006). Thus, "[e]xpert testimony is required when an issue involves matters beyond jurors' common understanding." *Id.*; *see also FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004) ("Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of the layman.") (quoting *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982)). In particular, "when the causal link is beyond the jury's common understanding, expert testimony is necessary." *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119–20 (Tex. 2004) (citations omitted). "Whether expert testimony is necessary to prove a matter or theory is a question of law." *Mack Trucks*, 206 S.W.3d at 583 (citing *Fulgham*, 154 S.W.3d at 89).

This case illustrates the type of complex causation theory that requires "expert testimony and objective proof." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 348 (Tex. 2015). Plaintiff's claims are based on the theory that Defendant was negligent in failing to properly design, assemble, inspect, and maintain the motorized wheelchair in question (as well as failing to warn him) and that Plaintiff's injuries could have been avoided had Defendant used due care. (Def.'s Mot. for Summ. J. [#8] at 2–3.) Plaintiff specifically alleges that, at the time of the accident, he exceeded the wheelchair's maximum weight capacity of three hundred pounds, which caused the wheelchair's right armrest to break while he was transferring from his wheelchair to his vehicle. (*Id.* at 3.)

Essentially, then, Plaintiff alleges that deficiencies or defects in the design, assembly, inspection, and maintenance of the wheelchair caused its right armrest to break, resulting in his injuries. Yet, the Supreme Court of Texas has "consistently required expert testimony and

8

objective proof to support a jury finding that a product defect caused the plaintiff's condition." *Gharda*, 464 S.W.3d at 348; *see also Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42–43 (Tex. 2007) ("If juries were generally free to infer a product defect and injury causation from an accident or product failure alone, without any proof of the specific deviation from design that caused the accident, expert testimony would hardly seem essential. Yet we have repeatedly said otherwise."). A lay juror's general experience and common knowledge do not extend to whether the fact that Plaintiff exceeded the wheelchair's maximum weight capacity caused the wheelchair's right armrest to break. Stated differently, what effect, if any, being over a wheelchair's maximum weight capacity has on the wheelchair's armrest is not a matter within the common knowledge of a layperson.

Furthermore, the proper design, assembly, inspection, and maintenance of a motorized wheelchair are not, as Plaintiff claims, matters "within the knowledge of the average person" that "can be easily understood by the fact-finder without the assistance of expert or scientific evidence." (Doc. 9 at 9); *see Coppock v. Nat'l Seating & Mobility, Inc.*, 121 F. Supp. 3d 661, 670 (W.D. Tex. 2015) (holding, in the context of a negligence and products liability case based on the failure of a wheelchair and the consequent injury to the plaintiff, that the defendant was entitled to summary judgment because the plaintiff offered no expert testimony regarding the wheelchair's alleged defect); *cf. Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 409 (5th Cir. 2016) (recognizing that, in the context of allegations that a vehicle's fuel tank was defectively designed, "expert testimony is crucial in establishing that the alleged design defect caused the injury"); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004) (stating, in the context of an unintended acceleration case, that liability cannot be based on lay testimony regarding its cause and further stating that this requirement is "not peculiar to unintended acceleration cases").

9

Plaintiff's causation theory, therefore, "involves matters beyond jurors' common understanding." *Mack Trucks*, 206 S.W.3d at 583. Hence, Plaintiff must have supported his causation theory with expert testimony and objective proof, and his failure to do so is fatal to his Original Petition. *See Gomez v. Ford Motor Co.*, No. 5:15-CV-866-DAE, 2018 WL 3603119, at *3 (W.D. Tex. Feb. 5, 2018).

Plaintiff's arguments to the contrary are unpersuasive. First, Plaintiff asserts that it has been repeatedly held that expert testimony is unnecessary to prove causation in cases involving wheelchair accidents. On this point, Plaintiff cites various cases from Michigan, Ohio, and Louisiana, but none from Texas. Of course, Texas substantive law governs this case. And, under Texas law, without expert testimony, Plaintiff cannot establish a *prima facie* case of negligence.

Plaintiff also states that, since he abandoned his strict products liability and warranty claims, his remaining claims against Defendant are for simple negligence and not for products liability. While not disputing that expert testimony may be required in a products liability case, Plaintiff insists that such testimony is not necessary in a simple negligence case such as this one.

"Generally, strict products liability and negligence are separate causes of action with different elements." *Carpenter v. Campbell Hausfeld Co.*, No. 01-13-00075-CV, 2014 WL 1267008, at *7 (Tex. App.—Houston [1st Dist.] Mar. 27, 2014, no pet.) (mem. op.). However, as explained above, proximate cause is an essential element of every negligence claim in Texas, and expert testimony is necessary to establish that Defendant's alleged negligence in designing, assembling, inspecting, and maintaining the wheelchair (as well as failing to warn Plaintiff) proximately caused Plaintiff's injuries. *See Horak v. Pullman, Inc.*, 764 F.2d 1092, 1095 (5th Cir. 1985) ("Whether applying the law of strict liability or negligence, Texas law requires that the defect or the negligent actions must be a producing and proximate cause of the accident."); *see*

*also Emerson v. Johnson & Johnson*, No. CV H-17-2708, 2019 WL 764660, at *3 (S.D. Tex. Jan. 22, 2019) (citing *Horak* for the proposition that "[c]ausation is a critical element of product liability claims, regardless whether the claim arises in strict liability or negligence"). Therefore, Plaintiff cannot escape his burden of offering expert testimony to support his causation theory merely by pleading that this is a case of simple negligence, rather than strict products liability.

In sum, Plaintiff's failure to designate an expert to testify concerning proximate causation of his injuries is fatal to his case. Therefore, Plaintiff's negligence claims should be dismissed. Additionally, because Plaintiff's negligence claims should be dismissed, his remaining claims for gross negligence and *res ipsa loquitur* should also be dismissed. *See Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990) ("*Res ipsa loquitur* is simply a rule of evidence by which negligence may be inferred by the jury; it is not a separate cause of action from negligence."); *Nowzaradan v. Ryans*, 347 S.W.3d 734, 739 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("[I]t is well established that a finding of ordinary negligence is prerequisite to a finding of gross negligence."); *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied) (stating that "one's conduct cannot be grossly negligent without being negligent").[2]

**B.     Plaintiff's Motion for Modification of Scheduling Order and for Leave of Court to File First Amended Complaint should be denied.**

Plaintiff's motion to modify the scheduling order and for leave to file a first amended complaint should be denied because he has not shown the requisite "good cause" to modify the Court's Scheduling Order and, at any rate, the proposed amended complaint would be futile.

The Fifth Circuit has held that Rule 16(b) of the Federal Rules of Civil Procedure, rather than the more liberal standard of Rule 15(a), governs amendment of pleadings after a scheduling

---

[2] Because Defendant is entitled to summary judgment on this basis, the Court need not address Defendant's other arguments in support of summary judgment.

order deadline has expired. *See S&W Enterprises, L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). Under Rule 16(b), "[a] schedule may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). "Four factors are relevant to good cause: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (quoting *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)). "Mere inadvertence on the part of the movant and the absence of prejudice to the non-movant are insufficient to establish 'good cause.'" *Anderson v. City of Dall., Tex.*, 210 F.R.D. 579, 581 (N.D. Tex. 2002); *see also McCranie v. Home Depot U.S.A., Inc.*, No. 415CV00423ALMCAN, 2016 WL 7551419, at *3 (E.D. Tex. Aug. 24, 2016) ("The absence of prejudice, alone, does not impart 'good cause' to allow an amendment."). Instead, the movant must show "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enterprises*, 315 F.3d at 535 (internal quotation marks and citation omitted).

Here, Plaintiff has not shown diligence. The Court's Scheduling Order set the deadline for amendment of pleadings as July 20, 2018. (Scheduling Order at ¶ 3.) Yet, Plaintiff waited until January 4, 2019, over five months after the deadline for filing amended pleadings had expired and over two years after commencing this case, to file his proposed amended complaint. *See Smith v. Gerhardt*, Civ. A. No. 04–2236, 2006 WL 1895490, at *1 (W.D. La. July 10, 2006) (agreeing with the magistrate judge's determination that there was not good cause to amend a complaint after the scheduling order's deadline because five months had passed since the deadline). Plaintiff's proffered justification for his undue delay in filing his proposed amended complaint—that he believed that this case might settle—is not "good cause" for failing to abide by the deadline set by

the Scheduling Order. *See*, *e.g.*, *Navarro v. Microsoft Corp.*, 214 F.R.D. 422, 423 (N.D. Tex. 2003) (denying the plaintiffs' motion for leave to amend the complaint after the scheduling order's deadline had passed where the "[p]laintiffs stated reason for delay is that they thought the case would settle at mediation"); *cf. Kirkwood v. Inca Metal Prod. Corp.*, No. 3:04-CV-0226-D, 2007 WL 2325222, at *2 (N.D. Tex. Aug. 13, 2007) ("Even if plaintiffs reasonably believed the case would settle, this does not excuse them from their duty to complete discovery by the deadline.").

In addition, the proposed amended complaint would be futile. In his proposed amended complaint, Plaintiff drops his claims against Defendant for strict products liability and breach of warranty and "supplement[s] the factual allegations of his general negligence and gross negligence claims." (Pl.'s Mot. for Leave to File First Am. Compl. [#11] at ¶ 8.) However, because the proposed amended complaint raises essentially the same negligence and gross negligence claims as the Original Petition, the Court's summary judgment analysis would be unaffected. Rather, the claims in Plaintiff's proposed amended complaint would still suffer from the same fatal defect discussed above—that is, that without expert testimony, Plaintiff cannot establish a *prima facie* case of negligence (or gross negligence). That Plaintiff's proposed amended complaint would be futile is a second reason for denying his motion to amend. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile."); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile.").

## V.  Conclusion and Recommendations

Having considered the motions, the record, and the applicable law, the undersigned recommends that Defendant National Seating & Mobility, Inc.'s, Motion for Summary Judgment

[#8] be **GRANTED** and that Plaintiff James E. Morris' Motion for Modification of Scheduling Order and for Leave of Court to File First Amended Complaint [#11] be **DENIED.**

### VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Report and Recommendation must be filed within fourteen (14) days after being served with a copy of same, unless this time period is modified by the district court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive, or general objections.  A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a de novo determination by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 3rd day of June, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE